FLOYD COUNTY BOARD OF EDUCATION
v. JOHNSON et al.

JOHNSON v. FLOYD COUNTY BOARD
OF EDUCATION.

Court of Appeals of Kentucky.
May 22, 1953.

Joe Hobson and Combs & Combs, Prestonsburg, for Floyd County Board of Ed.

A. H. Patton, Jackson, Cordell H. Martin, Hindman, for Robert and Russell Johnson.

STANLEY, Commissioner.

The judgment is that a deed was in fact executed to secure a debt, hence is to be regarded in equity as a mortgage; the Floyd County Board of Education as remote vendee was not an innocent purchaser; Lee Johnson and his son Russell are estopped from denying the conveyance, but another son, Robert, is not estopped and is entitled to recover $1,750, which is the equivalent of one-fourth of the sum paid by the Board for the property. The Board and Russell bring appeals from the judgment adverse to their claims.

Lee Johnson and his wife, Anna, the joint owners of a certain four-acre tract on Hen Pen Creek in Floyd County, in April, 1934, executed a deed to Susanna Johnson for the recited consideration of $220 "in hand paid, the receipt of which is hereby acknowledged." Lee and Anna Johnson and their boys continued in possession. Mrs. Johnson died intestate in January, 1935, survived by her husband and two sons, Russell, then nearly 21, and Robert, then 14 years old. In August, 1936, Lee

Johnson negotiated a sale of the property to McClelland Hall and wife. The sons knew all about the transaction. Johnson advised Hall that title to the property was in Susanna and it would be necessary to obtain the deed from her. This was done on August 31, 1936. Hall then paid Lee Johnson $780 and Susanna $220 in cash, and she executed a deed to Hall and his wife, Mary. The Halls took possession, repaired the residence and built a storehouse on the property. In May, 1946, the Halls conveyed two acres of land to the Floyd County Board. of Education for $7,000. In 1949, after having remained silent during the ten years the Halls occupied and improved the property, and stood by and seen the Board spend $72,500 on a school building which eventually cost $139,000, Lee Johnson and his two sons filed suit against the Board, alleging the deed from Lee and Anna Johnson to Susanna Johnson was but a mortgage. They also made the Halls parties defendant and claimed $7,000 rentals from them, but later dismissed the suit against the Halls.

■ We concur in the finding of the chancellor that the deed from Lee and Anna Johnson to Susanna Johnson was in fact the equivalent of a mortgage. But we are of opinion that the Board was an innocent purchaser.

The instrument seems to have been prepared upon a printed form of a deed. It has all the terms and features of an absolute conveyance. It is clearly so on its face, but contains a phrase at the end of the description of the property which the parties claim and apparently the court concluded was sufficient to put the Board on notice. The description is general, calling for fences, lines and stakes, concluding—

"* * * thence with the *ware* fence a condition fence between E. H. Hall & School lot to the beginning corner stake so as to contain 4 acres more or less if paid in twelve months from this date will be non admided."

Our decision turns on the phrase "if paid in twelve months from this date will be *non admided*." (Italics added.) The deed from Susanna Johnson to the Halls contains a similar general description but not this peculiar language. Halls' deed to the Board describes two acres by survey and gives three sources of title, including the deed from Susanna Hall of August 31, 1936. There is no reference to "non admided" in the deed.

The Board had the title examined by A. B. Combs, a competent lawyer, and by the Superintendent of Schools, Town Hall, who is also an attorney. They approved the title. Apparently Mr. Hall did not notice the peculiar phrase, but testified if he did, he attached no significance to it. Mr. Combs testified he had noticed it but it was so meaningless, especially when read with the clear provisions of the instrument as a deed, he regarded it as of no effect.

■ Protection extended a bona fide purchaser of real estate rests on the doctrine of estoppel. The denial of an equitable right in property as against such a purchaser has always been adhered to as indispensable to settled rights and titles. A deed absolute on its face but which in equity is regarded as a mortgage, because given as security for a debt, will not be enforced against an innocent purchaser. A recital in an instrument of conveyance in a chain of title is sufficient to put a purchaser upon notice of outstanding equities so as to preclude him from claiming protection if its terms ought to put him on inquiry. In such a case he will be presumed to have made proper inquiry and if he did not, he is guilty of bad faith and imputed negligence. 55 Am.Jur., Vendor and Purchaser, § 697. Honore's Ex'r v. Blackewell, 6 B.Mon. 67, 45 Ky. 67; Kentucky Lumber & Mill Work Co. v. Kentucky Title Savings Bank & Trust Co., 184 Ky. 244, 211 S.W. 765, 5 A.L.R. 391. But a purchaser is charged with notice only of those facts which the language reasonably imports. The recitals ought to explain themselves or lead to a source of explanation. They ought to be so intelligible and significant that they would naturally raise at least a well-grounded suspicion in the mind of a reasonably prudent man, or a man of ordinary diligence and understanding, sufficient to suggest inquiry that would lead to a knowledge of the requisite facts. 19 Am.

Jur., Estoppel, § 774; 39 Am.Jur., Notice and Notices, § 22; 55 Am.Jur., Vendor and Purchaser, §§ 697, 698, 709; 66 C.J. 1127.

■ The mystical phrase, doubtless inserted by an unlearned scrivener, is only a part of the description of the land conveyed. Without any sort of break, it begins, "if paid." What paid? The consideration is stated as having been entirely paid in cash. Perhaps the scrivener and the immediate parties knew what "non admided" means, but to the attorneys resident in the community it is without meaning. The members of this court and the writer of this opinion have not been able to solve the riddle or decipher the term. It certainly does not meet the test of having intelligible significance in relation to the title. The extrinsic circumstances negative any suspicion of a hidden defect in the title. The immediate vendees, the Halls, as we have said, had lived on the property and spent considerable money in improving it during the ten intervening years during which Lee Johnson and his two sons lived in the immediate community, one of the boys on occasion living with the Halls, and made no claim to an equitable interest.

■ As their mother, one of the joint grantors would have been estopped from claiming the equity against an innocent purchaser were she living, so her two sons as heirs of her estate are likewise estopped, having only a derivative right. Alcorn v. Superior Oil Corp., 245 Ky. 343, 53 S.W.2d 528.

On the appeal of the Board of Education, the judgment is reversed; on that of Russell Johnson, it is affirmed.